UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                           Case No. 02-CR-144

DEXTER FOWLER,

    Defendant.

**RECOMMENDATION AND ORDER RE: DEFENDANT'S PRETRIAL MOTIONS**

### I. BACKGROUND

On February 27, 2003, a federal grand jury sitting in the Eastern District of Wisconsin returned a superseding indictment in the above-numbered case. Although not named as a defendant in the original indictment, Dexter Fowler ("Fowler") was named as a defendant in the superseding indictment. More precisely, Fowler is named in Counts One, Twelve, Thirteen, and Sixteen of the superseding indictment. On December 20, 2006, Fowler was arraigned on the superseding indictment and entered a plea of not guilty. On February 7, 2007, and on March 9, 2007, scheduling conferences were held with counsel for Fowler. Among the matters discussed at those conferences were dates by which all pretrial motions would be filed and briefed. Under this court's order following the March 9, 2007 scheduling conference, all motions were to be filed no later than April 13, 2007. In accordance with that scheduling order, the defendant filed three pretrial motions. Specifically, Fowler filed: (1) a motion to suppress telephone surveillance evidence; (2) a motion to disclose co-conspirator and informant statements; and (3) a motion to exclude Rule 404(b)

1

evidence. The defendant's motions are now fully briefed and are ready for resolution. For the reasons which follow, it will be recommended that Fowler's motion to suppress be denied. Furthermore, the defendant's motion to disclose co-conspirator and informant statements will be denied in part as moot and denied in part on the merits, and the defendant's motion to exclude Rule 404(b) evidence will be granted in part and denied in part as moot.

## II. DISCUSSION

**A. Motion to Suppress Telephone Surveillance Evidence**

On May 1, 2002, the Honorable Rudolph T. Randa authorized a Title III wiretap (Application #2187), which was continued for 30 days on May 31, 2002, and on May 28, 2002 (Application #2216). Fowler challenges the legality of those intercepts on various grounds. First, Fowler argues that the government failed to show in its application necessity for the wiretap in accordance with Title 18 U.S.C. § 2518(1)(c) and 3(c). Second, Fowler argues that the wiretap application fails to set forth probable cause justifying the wiretap. Third, Fowler argues that the government failed to properly minimize the wiretap in compliance with Title 18 U.S.C. § 2518(5).

First of all, the question of whether the government failed to show in its application necessity for the wiretap has already been thoroughly addressed by this court in its March 27, 2003 Recommendation and Order Re: the Pretrial Motions of Defendants Belser and Davis. For the reasons stated therein, this court recommended that Belser's and Davis's motions to suppress, to the extent such motions were grounded on the argument of a lack of necessity, be denied. In a decision and order entered on November 21, 2003, the Honorable C. N. Clevert, Jr. adopted that recommendation and denied Belser's and Davis's motions to suppress based on the claimed lack of necessity for the wiretap. Fowler has not presented any substantive reason for calling into question

2

the correctness of that decision. To the contrary, he merely asserts in conclusory fashion that "[t]he affidavit and application lacked the required showing of necessity, referencing only what appears to be boilerplate jargon. The affidavit did not satisfactorily explain why other investigative techniques have not been tried against the target, the defendant and codefendants." (Def.'s Br. at 3.) Such being the case, to the extent that Fowler's motion to suppress is grounded on lack of necessity, it will be recommended that his motion to suppress be denied.

Fowler also asserts that the application for the wiretap fails to set forth probable cause. Specifically, he asserts in conclusory fashion that "[i]n the application, the government failed to specify the source of the evidence known and the reliability of said evidence, which is necessary for the Court to make the proper determination that probable cause actually existed. The application was devoid of facts establishing probable cause." In his reply brief, Fowler provides some further details of why his thinks the affidavit failed to set forth probable cause.

> A closed hearing is needed on who the Jamaican source might be and who Mr. C _ _ _ is (Sealed Affidavit at ¶ 59); if C_ _ _ was not listed as an anticipated interceptee, why was Fowler not so designated (Sealed Affidavit at ¶ 59 and f. 12); who the Mexican source might be (Sealed Affidavit at ¶ 80); and who the confidential informants are who provided this information, their backgrounds, current locations, availability for subpoena, plea agreements and consideration, etc.

The duty of a reviewing court is simply to ensure that the judicial officer had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238. Probable cause exists when it is reasonably believed that the evidence sought will aid in the prosecution of a particular offense and the evidence is located in the place to be searched. *See United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990), *overruled on other*

3

*grounds by United States v. Nance*, 236 F.3d 820 (7th Cir. 2000). "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002) (internal quotations omitted). "'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Kimberlin,* 805 F.2d 210, 228 (7th Cir. 1986) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

"The [judicial officer] to whom the warrant application is directed is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense, and the [judicial officer] need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (internal quotations omitted). In reviewing prior probable cause findings made by a judicial officer in issuing a warrant, "great deference is to be accorded to that determination." *United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 2002) (stating that "doubtful cases are to be resolved in favor of upholding the warrant").

Simply stated, applying the above standards to the wiretap application in this case leads me to easily conclude that the application sets forth probable cause to believe that the telephones of Marvel Belser and Kevin Roberts were being used in furtherance of a drug conspiracy and that interception of each telephone would provide evidence of such drug trafficking activity. As the government summarily recounts in its brief,

> Reliable sources of information established that Belser and Roberts had been engaged in selling large quantities of drugs over the course of many years. ¶¶ 12-18. A cooperative witness (CW6) whose reliability was established, placed recorded calls

4

under the direction and supervision of law enforcement to both the Belser and the
Roberts telephone on April 24, 2002 (one week prior to the wiretap authorization)
wherein [Belser and Roberts] engaged in drug-trafficking related telephone calls with
CW6. ¶¶ 39b and 39c. In addition, through the telephone analysis from the pen
registers and trap and traces placed on the target telephones, law enforcement was
able to establish that Marvel Belser and Kevin Roberts were utilizing the target
telephones during the preceding 30 days to communicate with several members of
the conspiracy, as well as with one another. ¶ 54.

(Gov't's Br. at 12.) Such being the case, to the extent that Fowler's motion to suppress is predicated on the proposition that the wiretap application was not supported by probable cause, it will be recommended that his motion to suppress be denied.

Finally, Fowler argues that the government failed to properly minimize the wiretap in compliance with Title 18 U.S.C. § 2518(5). Specifically, he asserts that

[t]he government failed to comply with the minimization requirements of the order
in this case. Government agents recorded several conversations that had nothing to
do with the alleged criminal activities that purportedly formed probable cause for the
surveillance. The wiretap was in effect for thirty days, and it appears that the
government recorded multiple unnecessary conversations, including conversations
between Fowler and [Belser's family[1]] involving everyday matters such as grocery
shopping and child care issues.

(Def.'s Br. at 4.)

Minimization is required by 18 U.S.C. § 2518(5) which states, in pertinent part:

(5) . . . Every order and extension thereof shall contain a provision
that the authorization to intercept shall be executed as soon as
practicable, shall be conducted in a way as to minimize the
interception of communications not otherwise subject to interception
under this chapter, and must terminate upon attainment of the
authorized objective, or in any event in 30 days . . .

In turn, 18 U.S.C. § 2518(10)(a) provides, in pertinent part, that:

Any aggrieved person in any trial, hearing or proceeding in or before

---

[1] Correction made by the defendant in his Amended Reply Brief.

> any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that -
>
> * * *
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

As stated above, Fowler claims that the government "recorded several conversations that had nothing to do with the alleged criminal activities . . . and it appears that the government recorded multiple unnecessary conversations." He does not identify such telephone conversations with any more particularity. Thus, the court will treat his motion as challenging the government's effort to minimize all of the telephone conversations to which he was a party; in other words, as if it were based on the claim that the government failed generally to properly minimize.

The Supreme Court interpreted the minimization provision of Title III in *Scott v. United States*, 436 U.S. 128, 140 (1978):

> The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.

When a defendant makes a generalized minimization challenge, the government bears the burden of making a prima facie showing of reasonable compliance with the minimization requirements. *United States v. Quintana*, 508 F.2d 867, 875 (7th Cir. 1975). The burden then shifts to the defendant to show why the surveillance was improper. *Id.* The defendant must show that the minimization could have been better accomplished while still allowing the government to achieve its legitimate objectives. *Id.*

6

Courts have set forth numerous reasons to justify a finding of statutory compliance in the face of evidence that a significant number of non-pertinent calls were intercepted. It has often been remarked that "[l]arge and sophisticated narcotics conspiracies may justify considerably more interceptions than would a single criminal episode." *United States v.Suquet*, 547 F. Supp. 1034, 1036 (N.D. Ill. 1982) (citing *United States v. Quintana*, 508 F.2d at 874). The location of the tapped phone is also extremely important. *Suquet*, 547 F. Supp. at 1037. A third systemic consideration is the extent of supervision exercised by the authorizing judge. "Where the judge has required and reviewed [interim] reports at frequent intervals, courts have been more willing to find a good-faith attempt to minimize unnecessary interceptions." *Quintana*, 508 F. Supp. at 875. Obviously, a reviewing court is more likely to sanction a surveillance if it has already been subjected to extensive and contemporaneous oversight. *Suquet*, 547 F. Supp. at 1037.

As for particular calls, several types are essentially exempted from the requirements of minimization. These include calls which are "very short"; those which are "one-time only" and involve unidentified voices; and, those which are "ambiguous in nature," particularly if they contain "guarded or coded language." *Id.* (citing *Scott*, 436 U.S. at 140). Indeed, in *United States v. Dumes*, 313 F.3d 372 (7th Cir. 2002), the Seventh Circuit stated that, "[f]ollowing *Scott*, some courts have held that calls of less than 2 minutes do not require minimization. See *United States Malekzadeh*, 855 F.2d 1492 (11th Cir. 1988); *United States v. Apodaca*, 820 F.2d 348 (10th Cir. 1987). We certainly agree that minimization of short calls is not required." *Dumes*, 313 F.3d at 380.

Moreover, in order to determine whether the government properly minimized interceptions of conversations, a test of reasonableness is applied to the particular facts of each case. *Scott,* 436 U.S. at 139. Absent "an unreasonable" intrusion, neither Title III nor the Fourth Amendment are

7

violated. *United States v. Dorfman*, 542 F. Supp. 345, 390 (N.D. Ill. 1982). To establish an unreasonable intrusion, a defendant must do more than identify particular calls which he contends should not have been intercepted. Rather, he must establish a pattern of interception of innocent conversations which developed over a period of the wiretap. *Dorfman*, 542 F. Supp. at 391. The obligation to minimize only requires that the government agents exercise good faith, reasonable efforts to minimize. Where a good faith effort has been made, the overall interception is valid, even though some non-pertinent calls are monitored. *United States v. Falcone*, 364 F. Supp. 877, 885 (D.N.J. 1973). Indeed, "perfection is not usually attainable, and is certainly not legally required." Instead, the "government is held to a standard of honest effort." *United States v. Cleveland*, 964 F. Supp. 1073, 1092 (E.D. La. 1997).

Finally, the court in *Scott* observed as follows:

> The type of use to which the telephone is normally put may also have some bearing on the extent of minimization required. For example, if the agents are permitted to tap a telephone because one individual is thought to be placing bets over the phone, substantial doubts as to minimization may arise if the agents listen to every call which goes out over that phone regardless of who places the call. On the other hand, if the phone is located in the residence of a person who is thought to be the head of a major drug ring, a contrary conclusion may be indicated.

*Scott*, 436 U.S. at 140.

In support of its argument that a prima facie showing of reasonableness has been shown in this case, the government has submitted the affidavit of Special Agent Gibson, to which is attached two summaries: (1) a summary of wiretapped calls on Marvel Belser's telephone intercepting conversations with Fowler and (2) a summary of wiretapped calls on Kevin Roberts's telephone intercepting conversations with Fowler.

8

As for the calls with Belser, the summary indicates that there were a total of eleven calls, three of which were less than 2 minutes in length. Of the remaining eight calls, the summaries show seven of them to clearly be pertinent. The one arguably non-pertinent call occurred on May 21, 2002. It was almost 8 ½ minutes in length, but was minimized on two separate occasions. As for the calls with Roberts, the summary indicates that there were a total of seventeen calls. Thirteen of the calls were two minutes or less in duration. And the other four calls were clearly pertinent. Given the foregoing, the government has made a prima facie showing of reasonable compliance with the minimization requirements. *Quintana*, 508 F.2d at 875. This causes the burden to shift to the defendant to show why the surveillance was improper. *Id.* In that regard, the defendant must show that the minimization could have been better accomplished while still allowing the government to achieve its legitimate objectives. *Id.* But, in his reply brief, Fowler has made no attempt to do so. Such being the case, his challenge to the adequacy of the government's minimization efforts must fail.

Thus, to the extent that Fowler's motion to suppress is predicated on the proposition that the government failed to properly minimize the wiretap, it will be recommended that his motion to suppress be denied.

**B. Motion to Disclose Co-Conspirator and Informant Statements**

Fowler filed a motion "for an order for the government to disclose all statements made by co-conspirators and informants which the government intends to use at trial pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978)." (Mot. at 1.) However, Fowler's brief in support of his motion seems to suggest that he is actually seeking more than the mere statements of co-conspirators and informants. More precisely, he states in that brief:

9

> Fowler has a right to obtain for use in cross-examination the specific promises and/or the substance of likely Rule 35 motions or other relief to be provided to such witnesses, if the matter goes to trial. The co-defendants' plea agreements that have been provided to counsel pursuant to the open file policy of the United States Attorney's Office are largely silent as to this evolving consideration. . . . It is further requested that the government provide complete arrest and conviction records of the codefendants and informants who will be witnesses against Fowler at trial. Unlike defense counsel, the government has access to these records through the NCIC system. Defense counsel also requests the complete copy of the presentence investigation reports (PSR) of each of the government witnesses who will testify against Fowler, so as to determine their versions of the offense and whether their versions implicate or exculpate Fowler, as well as their prior criminal history and other relevant conduct which could be the subject of cross-examination. . . . Only partial excerpts of some of the PSRs have been provided. . . . Although the government has provided many boxes of paper and audiotape discovery, it has yet to provide the specific statements of Fowler's co-defendants and government informants, which witnesses the government intends to use at trial.

(Def.'s Br. at 4-5.)

The government has asserted that it is following the open file in this case. Such being the case, the defendant has already received and will continue to receive, *inter alia*, "material disclosable under 18 U.S.C. § 3500 other than grand jury transcripts; reports of interviews with witnesses the government intends to call in its case-in-chief relating to the subject matter of the testimony of the witness; relevant substantive investigative reports; and all exculpatory material." Furthermore, in a letter to the court dated May 22, 2007, counsel for the government represents that

> [t]he government is well aware of its obligations under *Brady* to provide exculpatory information if it exists, and, under *Giglio*, to provide the defense with impeachment information regarding government witnesses, including criminal history, incentives or consideration given to encourage testimony, and any other information bearing on the witness' credibility. *Giglio* materials are routinely turned over in this district shortly before trial. However, in any event, the government has no authority to release pre-sentence reports, which are strictly confidential. I know of no case where this has been ordered.

(Ltr. at 2.) Given the foregoing, the defendant has already received or will receive from the

10

government all the information that he seeks in his motion, with the exception of the PSRs of the government witnesses. Accordingly, with the exception of that portion of Fowler's motion in which he seeks the PSRs of government witnesses, his motion will be denied as moot.

As for that portion of Fowler's motion in which he seeks the PSRs of government witnesses, his motion will be denied. The defendant has requested this information "so as to determine their versions of the offense and whether their versions implicate or exculpate Fowler." (Def.'s Br. at 4-5.) However, "in order to obtain discovery material under *Brady*, a defendant must first present evidence that impeaching [or exculpatory] material is contained within such material or that any material was suppressed by the government." *United States v. Romo*, 914 F.2d 889, 898-99 (7th Cir. 1990). In the instant case, the defendant has made no showing, via affidavit or otherwise, that the presentence reports of any of the government witnesses contain exculpatory or impeaching information. Moreover, "requiring disclosure of a presentence report is contrary to the public interest as it would adversely affect the sentencing court's ability to obtain data on a confidential basis from the accused and from sources independent of the accused for use in the sentencing process." *United States v. Greathouse*, 484 F.2d 805, 807 (7th Cir. 1973) (citing *United States v. Evans*, 454 F.2d 813, 820 (8th Cir. 1972); Rule 32(c)(2) Fed.R.Crim.P.

In conclusion, and for the foregoing reasons, Fowler's motion to disclose co-conspirator and informant statements will be denied in part as moot and denied in part on the merits.

**C. Motion to Exclude Rule 404(b) Evidence**

Fowler has filed a motion "precluding the government from offering Rule 404(b) evidence of any other transactions other than the three acts specifically charged in the indictment." (Mot. at 6.) He argues that

11

[t]he government's case to show a conspiracy will likely rely on Federal Rule of Evidence 404(b) and statements made by co-conspirators under Federal Rules of Evidence 801(d) and 804(b)(3). The prior bad acts alleged against a defendant must be disclosed and shown with specificity as to time, place and manner. *United States v. Huddleston*, 485 U.S. 681, 689 (1988). Does such evidence have a tendency to make the existence of a conspiracy Fowler was knowingly involved in more probable or less probable than it would be without such evidence being introduced? Even if relevant, is the probative value of such evidence substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury? *Id*. at 691.

At the very least, Fowler and his counsel have the right to receive a specific itemization of what acts the government's witnesses will testify Fowler was involved with in furtherance of the alleged conspiracy. Allowing the government to wait until trial to produce that evidence would deny Fowler his Fifth and Sixth Amendment rights.

(Def.'s Br. at 5-6.)

Pursuant to Federal Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is admissible for certain purposes "provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b).

In response, the government acknowledges its responsibility to give the defendant reasonable notice in advance of trial of the general nature of other acts evidence that it intends to introduce at trial. Indeed, it sets forth in its response at least one item of evidence that it already intends to attempt to introduce as 404(b) evidence, i.e., the contents of a telephone call between defendant Kevin Roberts and Fowler on May 8, 2002 at 3:02 p.m.

The notice requirement of Rule 404(b) also extends to evidence the government plans to use during cross-examination and for rebuttal. Fed. R. Evid. 404(b) Advisory Committee Notes; *see also United States v. Antonelli*, No. 97 CR 194, 1998 WL 259526, at *1 (N.D. Ill. May 13, 1998)*; United*

12

*States v. Mathews*, 20 F.3d 538, 551 (2d Cir. 1994). Thus, the government is cautioned that if, in the future, it concludes that it will attempt to introduce any evidence against the defendant pursuant to Rule 404(b), whether during its case-in-chief, for impeachment, or for possible rebuttal, it "shall provide reasonable notice in advance of trial." Fed. R. Evid. 404(b). While the government need not, of course, disclose evidence it does not yet intend to use, it should be aware of its continuing obligation to disclose other acts evidence in a timely fashion (including during trial, if that is when the need to introduce such evidence becomes apparent) in accordance with Rule 404(b).

All that having been said, however, the parties disagree as to when such "reasonable notice" should be given. The government proposes that such notice be given two weeks prior to trial and the defendant proposes that notice be given 90 days prior trial. Having considered the parties' respective positions, I am satisfied that giving the defendant notice no less than two weeks (i.e., no less than fourteen days) prior to trial of any Rule 404(b) evidence the government intends to introduce at trial is "reasonable notice" in compliance with Rule 404(b).

In sum, the government will be ordered to disclose, at least fourteen days prior to trial, any other acts evidence it then intends to introduce during its case-in-chief, for cross-examination, impeachment, or for possible rebuttal. The government must also fulfill its continuing obligation to provide adequate notice if, during the trial, it determines that it is necessary to introduce additional other acts evidence. Such being the case, Fowler's motion to exclude Rule 404(b) evidence will be granted in part and denied in part as moot.

### III. RECOMMENDATION AND ORDER

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to suppress (dkt. #982) be **DENIED**;

13

**IT IS FURTHER ORDERED** that the defendant's motion to disclose co-conspirator and informant statements (dkt. #980) be and hereby is **DENIED IN PART AS MOOT AND DENIED IN PART ON THE MERITS**;

**IT IS FURTHER ORDERED** that the defendant's "Motion to Exclude Rule 404(b) Evidence" (dkt. #981) be and hereby is **GRANTED IN PART AND DENIED IN PART AS MOOT**; specifically, the government is hereby ordered to disclose, <u>at least fourteen days prior to trial</u>, any other acts evidence it then intends to introduce during its case-in-chief, for cross-examination, impeachment, or for possible rebuttal.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this <u>15th</u> day of June, 2007, at Milwaukee, Wisconsin.

<u>s/ William E. Callahan, Jr.</u><br>
WILLIAM E. CALLAHAN, JR.<br>
United States Magistrate Judge